## Simon Florsheim v. John Dullaghan and James Dullaghan.

1. SEALED LEASE—*Power to Change by Parol.*—A lease under seal can not be varied by a parol agreement, but if the lease has terminated, the right of the lessee to make an independent oral agreement for the use of the premises for a term less than a year can not be questioned.

2. QUESTIONS OF FACT—*Termination of a Lease.*—Where the fact as to whether a lease has been terminated, depends upon conflicting testimony and is properly submitted to a jury, their verdict is conclusive.

3. MOTIONS FOR NEW TRIALS—*Sufficiency of a Defense Can Not be Raised, When.*—Whether a defense as shown by a plea is good or bad is not a question to be raised upon a motion for a new trial, based upon an alleged want of evidence or error committed during the trial. The matter should be addressed to the court below by a demurrer.

Assumpsit, for rent. Error to the Superior Court of Cook County; the Hon. JAMES HUTCHINSON, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed May 16, 1895.

REMY & MANN, attorneys for plaintiff in error.

It is contended that the rule of law that the terms of a sealed instrument can not be varied by parol, applies to this

case; citing Chapman v. McGrew, 20 Ill. 101; Lafferty v. John-
son, 17 Ill. App. 545; Witmer v. Ellison, 72 Ill. 302; Lewis
v. Fish, 40 Ill. App. 377; Hume Bros. v. Taylor, 63 Ill. 43;
Loach v. Farnum, 90 Ill. 368; Barnett v. Barnes, 73 Ill. 216.

P. O'Neil Byrne, attorney for defendants in error.

It is contended that the true doctrine on the question of
varying a sealed instrument by a parol contract is that a parol
executory contract will not be permitted to have that effect,
but an executed parol agreement may be shown to defeat a
recovery upon an instrument under seal; citing White v.
Walker, 31 Ill. 422; Loach v. Farnum, 90 Ill. 368; Cooke v.
Murphy, 70 Ill. 99; Dearborn v. Cross, 7 Cow. (N. Y.) 48;
1 Greenl. on Ev. (14th Ed.), Sec. 302, note 1 and 303; Bige-
low on Estoppel (5th Ed.), 684, 685; Swanzey v. Moore, 22
Ill. 63; Wheeler v. Frankenthal, 78 Ill. 124; Worrell v. For-
syth, 141 Ill. 30; McKenzie v. Harrison, 120 N. Y. 260;
Hastings v. Lovejoy, 140 Mass. 261; Dickinson v. Board,
etc., 6 Porter (Ind.) 135.

If the contract in question is a parol contract executed,
modifying the lease, or a parol contract for the surrender of
it, which is afterward executed, or a substitution of a parol
lease for one under seal, it will be valid. Ryan v. Kirch-
berg, 17 Brad. 132; Nachbour v. Weiner, 34 Ill. App. 237;
Turner v. Mantonya, 27 Ill. App. 500; Dills v. Stobie, 81
Ill. 202.

In Baker v. Pratt, 15 Ill. 571, cited in Dills v. Stobie,
*supra*, it is said:

" A parol surrender has been held sufficient in Allen v.
Jacquish, 21 Wend. 628; Dearborn v. Cross, 7 Cow. 48;
McKenzie v. Lexington, 4 Dana, 129; McKenney v. Reeder,
7 Watts, 123."

In Williams v. Vanderbilt, 145 Ill. 238, the cases of Dills
v. Stobie and Baker v. Pratt, *supra*, are approved, and the
court says :

" An executive agreement to surrender may be operative
as a surrender (2 Wood's Land. & Ten., Sec. 494, p. 1169)."

In Allen v. Jacques, 21 Wend. 634, the court, after stating

the general proposition that contracts under seal can not be modified by parol agreement, says:

"The cases of Lattimore v. Harsen, 14 Johns. R. 330, and Dearborn v. Cross, 7 Cowen 48, are relied on as showing that a specialty may be modified by a simple contract between the parties. If these cases be maintainable, and I think they are, it must be on the ground of a contract for rescission executed and fully carried into effect, not on the simple idea of modification by a parol contract executory; and they were so afterward regarded in the subsequent cases of Suydam v. Jones, 10 Wend. 180, Barnard v. Darling, 11 Id. 28, and De La Croix v. Bulkley, 13 Id. 71."

In 1 Greenleaf on Evidence, 302, n.·1, cited in the Worrell case, it is said:

"But if the obligation be by deed, and there be a parol agreement in discharge of such obligation, if the parol agreement be executed, it is a good discharge."

And the note cites LeFevre v. LeFevre, 4 S. & R. 241. Here there was a deed giving the grantee the right to lay water pipes over the land of the grantor. Afterward, while the deed was in force, the route for laying the pipes was changed by oral contract and the contract executed. The court says:

"As to the objection that this evidence was in direct contradiction to the deed, the evidence was not offered for that purpose, but to show a substitution of another spot as being more for the mutual benefit of both parties. If this had not been carried into effect, the evidence would not have been admissible. But where the situation of the parties is altered by acting upon a new agreement, as here, the evidence is proper."

The statute of frauds in this State does not require the surrender of a written lease to be in writing. Harms v. McCormick, 30 Ill. App. 125.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action in assumpsit for rent, and the one special

Florsheim v. Dullaghan.

count of the declaration set up a lease under seal. The lease ran from May 1, 1889, to May 1, 1890.

The defendants admitted the execution of the lease and pleaded a termination thereof by reason of the happening of a fire, whereby, first, they were released by the terms of a fire clause in said lease; and whereby, second, the premises were rendered untenantable, and the plaintiff having failed to repair after notice, the defendants were, by the terms of the same fire clause, released.

General and special replications were filed to the pleas; it being replied, specially, that the defendants continued to occupy and enjoy the premises after the happening of the fire, and after the premises became untenantable.

Rejoinders were filed by the defendants, upon which issues were joined. The special matter rejoined was, first, that after the happening of the fire, and after the premises became untenantable, they, defendants, continued to occupy and use the premises, upon the express understanding and agreement that the plaintiff would repair the premises, which he did not do, and thereby the defendants were released from liability to pay for the use and occupation thereof; and, second, that after the happening of the fire and untenantable condition of the premises, and before the lease had, by its terms, expired, the plaintiff requested defendants to vacate the premises, and promised defendants that if they would vacate the premises by a certain named date, he, the plaintiff, would not charge the defendants any rent for the premises from the first day of October, 1893 (1889), until the time the defendants should so vacate, and that defendants did vacate the premises by the time fixed by plaintiff.

To such rejoinders the plaintiff replied, generally, denying the agreement and promise set forth therein.

The cause was tried before a jury who found the issues for the defendants, and judgment was entered accordingly.

The only unpaid rent involved was that which accrued from October 1st until December 24, 1889, at which last date the defendants vacated the premises.

While counsel for plaintiff in error do not waive other errors they confine themselves mainly to a discussion of the issue presented by the alleged promise, set up by the last rejoinder, that if the defendants would vacate the premises by a certain time the plaintiff would charge them no rent after October 1st.

That promise, assuming it to have been proved, rested entirely in parol, and it is contended that the terms of a sealed instrument can not be varied by parol evidence.

The verdict was a general one, finding for the defendants upon all the issues presented by the pleadings.

The evidence disclosed that the defendants paid none of the rent that accrued from October 1, 1889, and that they remained in possession of the premises until the close of December 24, 1889. The premises were known as 217 Wabash avenue, and were a store one story in height. On or about the first of October, in the night time, a fire originated in and substantially destroyed the adjoining store, 215 Wabash avenue, and it is shown by undisputed evidence that the premises in question were involved in the fire; that both the front and rear doors were broken off and that some of the glass was broken, and that a hole about two feet wide and about six feet long was burned and cut, or broken through the roof and ceiling, near the center of the rear part of the store.

In appellant's brief it is said: "It is also not disputed that the roof of the building was damaged by fire * * * so that there was a hole in the same * * * about two by six feet, or perhaps a little longer."

It is not claimed that the plaintiff made any repairs after the fire, although he had notice of it and visited the premises on the morning after it occurred. He testified that he told the defendants he would repair the roof, but that they must first pay him the rent that was due him for the months of September and October and a part of August, and that in October they paid him the August and September rent.

The lease contained a provision that if the lessors should decide to improve the premises the lessees should yield up

possession at any time upon sixty days' notice; and it is not disputed but that about the time of the fire the plaintiff determined to erect a large and permanent building upon the site of the one-story structures, including the store occupied by defendants, and that the parties had one or more conversations upon the subject of defendants yielding possession to plaintiff in the month of December following. The parties differed in their testimony concerning the purport of such conversations and the time of their occurrence, the plaintiff's version being that he promised that if they would move by the 10th of December he would not charge rent for any part of December, and the defendants' version being that plaintiff promised if they would move as early as possible in December he would charge no rent from October 1st.

The two defendants fixed the date of that conversation as having been on or about November 1st, and certainly between the 1st and 10th of November, and the plaintiff fixed it at some time in November, possibly as early as the 1st of November.

We are not concerned with the terms of the conversation so far as it related to the conditions upon which the defendants should vacate the premises, or the time in December when they should vacate, for the verdict of the jury has determined those questions in favor of the defendants' version.

It is material for us, however, to determine the relations of the parties to one another under the sealed lease at the time the conversation was had. If that lease were then in force the competency of an oral agreement to vary its terms would necessarily arise and have to be discussed; if, however, the sealed lease had terminated at or before the conversation was had, no such question is presented, for it can not be questioned but that an independent oral agreement for the use of premises for a term less than a year is valid.

One of the issues presented under the pleadings was whether the premises had been rendered untenantable by fire.

The clause in the lease referred to in the pleas as the "fire clause," is as follows:

"In case said premises shall be rendered untenantable by fire or other casualty the lessor may, at his option, terminate this lease or repair said premises within thirty days, and failing so to do, or upon the destruction of said premises by fire, the term hereby created shall cease and determine."

There was considerable evidence, mainly undisputed, of the condition of the premises occasioned by the fire, and in which they remained during the continued occupancy thereafter by the defendants, and without reciting it, we think the jury were entirely justified in concluding, as from their verdict we presume they did, that the premises were rendered untenantable by the fire, and that the plaintiff failed to repair them within thirty days thereafter.

With that conclusion reached, the other follows from the provision of the lease, above quoted, that the term thereby ceased and determined. The defendants might, nevertheless, waive a termination of the lease, for a failure by plaintiff to repair.

Now, the fire occurred on or about the 1st of October. No witness stated it to have occurred later than October 10th, and the plaintiff testified that it happened some time in October.

The conversation between the parties with reference to defendants' yielding possession, as we have seen, took place between the 1st and the 10th of November, and it is entirely consistent with the proved facts and the finding of the jury, that at the time the conversation was had the term of the lease had ended, and that it was so treated by the parties when they had the conversation.

There was evidence that prior to that conversation all interviews and communications between the parties had reference to repairing the premises, and there is no evidence that thereafter anything was said about repairs.

We regard the evidence as satisfactorily showing that at the time the conversation about removing and a release from rent was had, the term of the lease had ended, and that the parties so treated it. It was, therefore, then competent for the parties to contract together orally with reference to the

Florsheim v. Dullaghan.

terms upon which a continuation of occupancy should be had and a peaceable surrender be made.

As to what those terms were the verdict of the jury, upon the evidence, is conclusive.

There was, we think, a fair preponderance of the evidence in favor of the defendants that the premises had been rendered untenantable by fire, and that plaintiff had failed to repair within thirty days as he had the option to do, and that thereby the term had ended; and that thereafter the defendants occupied in pursuance of a new arrangement between them and the plaintiff.

The verdict has decided what that arrangement was, and we will not disturb it.

The judgment of the Superior Court is therefore affirmed.

Mr. Justice Gary.

I concur in the result upon a shorter ground.

The parties got to an issue upon the allegation by the defendants, in a rejoinder to a replication of the plaintiff, that shortly after the fire, and long before the lease would by its terms expire, the plaintiff requested the defendants to vacate, and promised them that if they would vacate by a certain date, he would charge them no rent after October 1, 1893. All the issues were found for the defendants.

Under the old practice, by which each issue was separately found, and so appeared on the record, if all material issues were found for the plaintiff, and one or more immaterial issues found for the defendant, the plaintiff might have judgment *non obstante veredicto*. Tidd's Practice, 575, 921.

But if with some good pleas, all the issues are found for the defendant, no judgment can be entered for the plaintiff because of any bad pleading by the defendant. Hitchcock v. Haight, 2 Gilm. 604.

Whether the defense pleaded was a good defense or not is a question which, never having been propounded to the court below, that court could not have erred upon; and this court is but a court of review.

Whether the defense is good or not, is not a question on a motion for a new trial based upon alleged want or weight of evidence; or errors committed during the trial. Nothing in the motion questioned the sufficiency of the rejoinder.

The whole argument of the plaintiff, if good, that the matter of the rejoinder was bad, as being an attempt to vary by parol a contract under seal, should have been addressed to the court below on demurrer to that rejoinder, and would be of no avail on this writ of error, if the insufficiency of that rejoinder were—which it is not—assigned for error.